OCTOBER 17, 1843.

*In the matter of the Receiver of the City Bank of Buffalo.* E. FITCH SMITH, for petitioner. This was an application by the receiver of the property and effects of the City Bank of Buffalo for the instruction and direction of the court in relation to the settlement and adjustment of certain claims against the Bank, which had been presented to and disallowed by him.

*Act abolishing the office of Bank Commissioner—its effect on suits previously commenced.*

A bill was filed by the Bank Commissioners against the corporotion, charging it with insolvency, and with a violation of its charter, and praying for an injunction to restrain such corporation and its officers from exercising any of its franchises and privileges, and for the appointment of a receiver of its property and effects, to distribute the same among its creditors, &c. And upon due notice of the application to the proper officers of the bank, a final order for an injunction and for the appointment of a receiver was made accordingly. Subsequently an order was made, according to the directions of the statute, to restrain the creditors from proceeding at law against the Bank, and requiring them to exhibit their claims and demands to the receiver and become parties to the suit within a certain time specified in that order. In pursuance of such order various claims were presented to the receiver; some of which were allowed by him, and others were rejected. The cause was afterwards brought to a hearing upon the bill taken as confessed against the corporation, and

in July, 1841, the Chancellor made a final decree thereon, adjudging and declaring that the Bank had forfeited its corporate rights and privileges, and perpetually enjoining it from exercising them; that the corporation be continued in existence so far only as might be necessary to enable the receiver to collec tforeign debts, and to recover the foreign property in the name of the corporation, but for no other purpose whatever; and that when those objects should have been accomplished the corporation should be deemed to be actually dissolved. The final decree also directed the payment of the costs of the complainant's solicitor out of the funds of the Bank in the hands of the receiver.

The parties who had presented their claims against the Bank not having agreed to the appointment of referees to settle their claims, which were rejected by the receiver, now applied to the Chancellor for the appointment of such referees, as authorized by the article of the revised statutes relative to the powers, duties and obligations of trustees of insolvent debtors. The receiver applied to the Chancellor and obtained an order refering it to a master to settle and adjust all such claims which had been presented within the time allowed by the former order and disallowed by the receiver, except such as the claimants and the receiver should, within thirty days, mutually agree to refer to referees to settle and adjust according to the statute. And none of the claims having been submitted to the referees within the time prescribed, the master proceeded in the reference as to such claims and had made his report in relation to one of these claims at the time when the act of the 18th of April, 1843, abolishing the office of Bank Commissioner, went into operation. That act having made no provision for the revival or continuance of suits in chancery, commenced by and in the names of the Bank Commissioners, the master doubted whether he had a right subsequently, to proceed in the execution of the order of reference to him. And the object of this application was to obtain the decision and direction of the court in the premises.

THE CHANCELLOR. The sixth section of the act abolishing the office of Bank Commissioner, (*Laws of* 1843, *p.* 301,)

authorises the comptroller in certain cases to appoint an officer as a substitute for those whose office is abolished. But his powers and duties do not appear to apply to a case like the present, where a bank has already been proceeded against; even if he would be authorized to institute a proceeding in this court for an injunction against the bank which he is appointed to examine. The power of such special commissioner to apply in his own name for an injunction, or for the appointment of a receiver against the particular bank to which his appointment relates, is at least doubtful. For the legislature in the adoption of the sixth section of the act, appear only to have had in contemplation an examination into the condition of the bank. And if they had intended to give him the power which the former Bank Commissioners, or a majority of them, jointly possessed, in instituting proceedings against the bank in this court, they probably would have employed different language to signify that intention.

But although the statute has made no provision for the revival or continuance of a suit of this kind, commenced by the Bank Commissioners, if a revival is absolutely necessary for the purposes of justice, this court has unquestionably the power, upon a proper bill filed by a party interested in such revival, or by the attorney-general if the interest of the people requires it, to allow the proceedings already instituted to be continued. In cases of this kind, after the making of the final order for the appointment of a receiver, such receiver becomes absolutely entitled to all the property and effects of the corporation for the purpose of distributing the same among the creditors and stockholders. (2 R. S. 464 § 42, and 469 § 67.) Such final order is therefore in the nature of a decree in an ordinary creditor's suit against executors, or others, who are trustees of a fund upon which several distinct creditors have claims for the payment of their debts rateably, or according to a specified order of priorities. In cases of that kind, creditors who are not nominal parties to the suit, make themselves such parties in fact, by coming in and presenting their claims to the master under the decree, and submitting themselves to the jurisdiction of the court, for the settlement

and adjustment of their respective claims upon the fund, as directed by the decree or order under which such claims are presented. A creditor who comes in and makes his claim under such a decree, is quasi a party to the suit, and entitled to the benefit of the decree, as such party, and may be restrained from proceeding at law for the recovery of his debt after he has made his election to proceed in this court for the recovery of his debt under the decree. (*Farnham* v. *Burroughs*, 1 *Dick. Rep.* 63.) And it is now settled that after such a decree, a creditor who is entitled to come in under it, although he has not so come in, and is not in fact a party, may be restrained from proceeding at law, and be compelled to come in under the decree, or lose his claim upon the fund. (*Douglass* v. *Clay*, 1 *Dick. Rep.* 393. *Mocher* v. *Reed*, 1 *Ball and Beatty* 318. *Goate* v. *Fryer*, 2 *Cox C. C.* 201,) Neither will he be permitted to file a new original bill in this court against the executor, or the trustee of the fund. But if he could not come in under the decree in that suit, or is entitled to more extensive relief than he could obtain under that decree, he may be permitted to file a new bill in the nature of a supplemental suit. (*Brookes* v. *Gibbons*, 4 *Paige's Rep.* 374.)

Under such a decree for the benefit of creditors generally, therefore, all the creditors who may wish to come in under the same and avail themselves of its provisions are for every substantial purpose considered as parties. And if the nominal complainant neglects to proceed with due diligence under the decree, a creditor who is entitled to come in and prove his debt before the master will have leave to prosecute the suit. (*Powell* v. *Walworth*, 2 *Mod. Rep.* 183. *Cook* v. *Bolton*, *Russ. Rep.* 282.) And where the sole complainant in such a suit dies, or the suit becomes abated by the death of the defendant therein, if the complainant or his representative does not revive within such reasonable time as may be fixed by the court for that purpose, it is a matter of course to permit any creditor who has established his debt before the master, to file a supplemental bill in the nature of a bill of revivor to revive and continue the proceedings. (*Dixon* v. *Wyatt*, 4

*Mod. Rep.* 393. *Houlditch* v. *The Marquis of Donegall,* 1 *Sim. & Stu. Rep.* 491. *Mitf. Pl. 4th Lond. ed.* 79. 3 *Dan. Ch. Prac.* 173.) Although the cases referred to by Lord Redesdale were those in which the creditor had already come in and established his claim before the master, I apprehend that any creditor who had an existing claim against the fund and a right to come in and prove the same under the decree, has an equal right to file a supplemental bill to revive and have the benefit of the former proceedings. The only difference between his case and that of a creditor who has established his claim appears to be, that the former would be bound not only to state the existence of his debt in the supplemental bill, but also to prove it, if it was denied by the defendant's answer, before he would be entitled to a decree to revive and continue the proceedings. (*White on Sup. and Rev.* 156.)

If a revival of the suit in this case was necessary, therefore, I should, under the circumstances of the case, permit any of the creditors of the Bank who had presented and proved their claims to the satisfaction of the receiver, under the order for that purpose made by the event, to file a supplemental bill to revive and continue the proceedings. And similar permission would be given to any creditor who had presented his claim to the receiver within the time limited by the order for that purpose, upon the presentment of a petition upon oath showing that his claim which had been rejected by the receiver was a valid claim against the Bank at the time of its failure.

A revivor of the proceedings does not however appear to be necessary where there is no further litigation to be had with the defendant in the original suit, and when the only questions to be settled are between the different creditors claiming payment out of a fund which is in the possession of an officer of the court and under its control. (3 *Dan. Ch. Pr.* 224.) In the case under consideration, the nominal complainants are no longer in existence, and their right to continue these proceedings has not devolved upon any other persons or officers representing the same right. Indeed the whole object of the

suit has already been attained by placing the funds of the bank in the hands of the receiver, to be distributed among the creditors and stockholders of the corporation under the direction of the court. And the charter of the bank has in fact been annihilated by the decree, so that the citizens of the state are in no danger of being injured hereafter by any proceedings of its officers. All that is necessary, therefore, is to direct an order to be entered that the master proceed upon the reference to ascertain and determine the validity of the claims which have been presented to the receiver and disallowed. As there are in fact no bank commissioners, and the corporation itself is dissolved so far as relates to any proceedings in this state, it appears to be improper to entitle the papers hereafter as in the original suit; except in the order for the master to proceed, which should be so entitled. But that order will direct that all subsequent proceedings shall be entitled " In the matter of the Receiver of the City Bank of Buffalo." And the right of the creditors, against whose claims the master has reported, to except to his report, must be exercised within the usual time allowed by the rules and practice of the court after service of a copy of the order upon them or their solicitor.