Westervelt *v.* Gregg.

## WESTERVELT, ex'r, &c. *vs.* GREGG.

The *rendering* of an account to the surrogate, by an executor or administrator, and the *settlement* of that account after it has been rendered, are not one proceeding; though the latter frequently is a mere continuation of the former proceeding. The revised statutes authorize the surrogate, after the expiration of eighteen months, to make an order requiring the executor or administrator to render an account of his proceedings. And such order may be made upon the application of a person having a claim upon the estate of the decedent, either as creditor, legatee, or next of kin, or of any person in behalf of a minor having such a claim. Or, it may be made by the surrogate, by virtue of his office, and without any application on the part of those who are interested in the estate.

The statute also directs the manner of rendering such account; and authorizes the examination of the executor or administrator on oath. And when that is done it completes the *rendering* of the account, and terminates the proceeding; unless the executor or administrator has asked for a final settlement of the account; or some person interested in the estate has applied for the payment of his debt, or legacy, or distributive share.

Where an executor or administrator applies for a final settlement, the surrogate, after the account has been rendered, is authorized to adjust and settle the same. And for this purpose, any person interested in the estate may surcharge, or falsify the account; and witnesses may then be examined in relation to the matters in dispute between the parties. And in such cases, the surrogate may refer the accounts to an auditor, or auditors, to examine and report thereon.

Although the executor or administrator does not ask for a final settlement, by any proceeding on his part, the surrogate has power to decree the payment of debts, legacies, and distributive shares, out of the funds of the estate in the hands of the executor or administrator.

Where an application is made to the surrogate, by a creditor, or by a legatee who is entitled to a legacy of a specified amount, if the executor or administrator denies that the fund in his hands is sufficient to pay that and all other claims which are entitled to a preference, or to an equality in payment, the surrogate is authorized to adjust, or settle, the account of the executor or administrator; for the purpose of

Westervelt *v.* Gregg.

ascertaining whether the claimant is entitled to a decree for the payment of the whole of his debt, or legacy, or only of a part thereof.

Where the executor has not already rendered his account to the surrogate, a creditor, or legatee, who seeks for payment of his debt, or legacy, may, in his petition, ask for an account, and also for the payment of such debt, or legacy. And after the account has been rendered, if its correctness is disputed, the surrogate may proceed to settle the same, so far as concerns the rights of those parties, and may make his decree, as to the payment, accordingly.

A residuary legatee, or a person who is entitled to a distributive share, may also proceed in the same manner, to have the account of the executor or administrator liquidated and settled; so as to obtain his residuary or distributive share of the estate of the decedent.

But in either case, if the applicant, in his petition to the surrogate for an account, has not asked for the payment of his debt, or legacy, or distributive share, but merely that the executor may render an account, he must make a new, or further, application to the surrogate, stating the nature and extent of his own claim upon the fund, and his objections, if any, to the account rendered by the executor or administrator; and asking that the account may be settled and adjusted, and that he may be paid the amount of his claim, or so much thereof as he may be entitled to, out of the fund in the hands of such executor or administrator.

Where the petition, presented to a surrogate by a legatee, asked for no relief whatever except that the executor might be ordered to render an account according to law; *Held* that the surrogate having granted the prayer of the petition, his jurisdiction under that petition was exhausted; and that no settlement of the account of the executor could properly be directed, without the presenting of a new or farther petition, praying for the settlement and adjustment of the account, and the payment of the distributive share of the petitioner.

Where a distributive share of the estate of a decedent belongs to a married woman, the petition to the surrogate, asking for the payment of such distributive share, must be presented in the joint names of such married woman and her husband; and not in the name of the husband alone.

Upon proceedings before the surrogate, against an executor, to compel the rendering of an account by him, the executor should be permitted to verify his account by his oath. And, for the protection of the rights of others, the surrogate should in all cases require such account to be rendered on oath.

An executor or administrator may be examined on oath, upon the mere rendering of an account by him; but such examination must be before the surrogate himself. For he is only authorized to appoint an auditor, to examine and report upon the accounts, where there is to be a settlement of the accounts, either final or otherwise.

An application to the surrogate, by a creditor, legatee, or distributee, to compel the executor or administrator to pay the debt, legacy, or distributive share out of the fund in his hands, is not such a suit as will entitle the party proceeded against to security for costs, where the applicant is a non-resident.

The provisions of the revised statutes relative to security for costs, apply only to suits in courts of record, and are not applicable to proceedings before a surrogate.

THIS case came before the chancellor upon an appeal by the acting executor of H. Westervelt, deceased, from two decisions and orders of the surrogate of the city and county of New-York. Gregg, the respondent, whose wife was a legatee of the testator, presented a petition to the surrogate, stating, among other things, that more than eighteen months had elapsed, and that no account had been rendered; and praying for an order of the surrogate requiring the executor to render an account according to law. An order was made accordingly; and the executor was duly cited to render his account. On the second of October, 1845, the executor rendered his account, pursuant to the order, and offered to verify the same by his oath; but the surrogate refused to permit him to verify the same, and the account was filed without oath. The surrogate inquired of the counsel for the petitioner whether the account would be contested by him; and being informed it would be so contested, the surrogate, without any application on the part of the petitioner, decided to refer the accounts to an auditor for examination. The counsel for the executor objected to the reference, on the ground that the counsel of Gregg had not stated any objections to the account. But the surrogate overruled the objection, and made an order referring the accounts to an auditor to examine, and to report his determination thereon upon a specified day; which day was also appointed for the hearing of the parties on the question as to the confirmation of the report of the auditor, and for further directions.

Immediately upon the making of that order, the executor presented to the surrogate an affidavit of the non-residence of Gregg, which fact was admitted by the counsel for the latter, and asked for an order for security for costs. That motion was denied. And from the order denying the same, and also from the order referring the account to the auditor, the executor appealed.

*O. L. Barbour*, for appellant. I. As respects the order appointing auditors. The proceedings before the surrogate were not of such a nature as to authorize him to refer the account of the executor to auditors. The revised statutes contain a section

specifying the time and manner in which an executor or administrator may be required, by an order of the surrogate, to *render an account* of his proceedings. (2 *R. S.* 92, 2d ed. § 52.) The subsequent sections of the same article, down to § 60, direct as to the manner in which the account shall be rendered, the evidence of payments, the commissions of the executor, &c. Then the 60th section provides that if, upon being required by any surrogate to render an account, an executor or administrator desires to have the same *finally settled,* he may apply to the surrogate for a citation to the creditors, and next of kin of the deceased, and the legatees if there be any, to appear before him and to attend the *settlement* of such account. The succeeding sections specify what proceedings shall be had thereupon. The 64th section authorizes the hearing, of the allegations and proofs of the respective parties, to be adjourned from time to time. And it authorizes the surrogate to appoint one or more auditors to examine the accounts presented to him, and to make report thereon, subject to his confirmation, &c. This is the only section to be found in the revised statutes, which authorizes the appointment of auditors. And we insist it applies, not to the proceedings specified in the fore part of the article, for the rendering of an account by an executor, but to proceedings before the surrogate, under the 60th section, for the final settlement of the executor's account. The proceeding in this case was of the former description, and not for a final settlement. Consequently, the surrogate had no authority to refer the account to auditors. (*See Gardner* v. *Gardner,* 7 *Paige,* 112.)

The executor should have been allowed to verify his account, by his own oath. By the revised statutes, it is provided that an executor shall be allowed, on the settlement of his account, for any item of expenditure under twenty dollars, for which no voucher is produced, if the same be supported by his own oath. (2 *R. S.* 92, § 55.) The appellant, therefore, had an interest in having his account presented to the surrogate with such a verification. And if it was his right so to verify it, the refusal of his request was an injury to him.

The proceeding before the surrogate was not properly institu-

Westervelt v. Gregg.

ted in the name of the respondent alone. It being an application on account of a distributive share which belonged to the wife of the petitioner, she should have joined in the petition.

II. As to the order refusing to require the respondent to give security for costs. The statute provides that when a suit shall be commenced in *any court* for a plaintiff not residing within the jurisdiction, &c., the defendant may require such plaintiff to file security for the payment of the costs that may be incurred by the defendant in such *suit* or *proceeding*. (2 *R. S.* 2*d ed.* 515, § 1.) We suppose this was substantially a suit, before the surrogate. The statute appears to contemplate a litigated proceeding before the surrogate, in which there is, in effect, a plaintiff and a defendant, and it specifies what evidence shall be admitted, and what allowances shall be made to the executor, and provides for enforcing obedience to the order of the surrogate. But if it should be deemed not to be a suit, it is at least a *proceeding;* and that, we submit, is sufficient, within the intent and language of the statute. There can be no doubt that the jurisdiction exercised by a surrogate, is in all cases, that of a court. The kind of court which is authorized to require the giving of security for costs, is not specified in the statute. It is not even required to be a court of record. Justices' courts, however, are provided for by another statute. (*Laws of* 1831, *p.* 403, § 32 ; 2 *R. S.* 228, §17.)

*L. Livingston,* for respondent. I. Auditors may be appointed by the surrogate to examine accounts presented to him. (2 *R. S.* 34, 2*d ed.* § 64.) The statute does not prescribe any rules or regulations as to the time when the surrogate is to refer accounts to auditors ; but leaves the same wholly in his discretion. The transcript shows that the accounts were to be contested. That was, in itself, a sufficient reason for the surrogate to refer them to an auditor. The surrogate has, in such matters, a right to regulate his own practice ; and an appeal cannot be taken from the decision of the surrogate, upon a mere point of practice : unless he violates some provision of the statute. The refusal of the surrogate to swear Westervelt to the

affidavit annexed to his account, was not a refusal to do any judicial act as surrogate.   The affidavit could have been sworn to before any commissioner of deeds, and it was not necessary that the oath should be administered by the surrogate.   The respondent had a right to examine the executor on oath touching his payments, and as to any property which had come to his hands, and the disposition thereof.   (2 *R. S. 2d ed.* 33, § 54.)

II. An application to a surrogate for an order to compel an executor to account, is not a *suit*, within the meaning of section one, title two, of chapter ten, of the third part of the revised statutes. (2 *R. S.* 515.)   The executor was in default in not accounting within the time allowed by law, and could have been called to account by the surrogate, without any application by the respondent.   (2 *R. S.* 32, § 52.)   It was the duty of the executor to account, whether called upon or not.   (2 *R. S.* 33, § 60.) The expenses of the accounting are to be paid out of the estate of the deceased.   The reason alleged by the appellant why security for costs should be given, was that he might be compelled to appeal from some decision of the surrogate on the accounting.   This was not a sufficient reason for requiring security to be given.   The 5th section of the statute respecting security for costs, directs the bond to be filed with the clerk of the court, &c.   This shows that the provisions of the revised statutes on the subject, were only intended to apply to courts of record.   A surrogate's court is not a court of record, and it has no clerk.   Consequently the proceeding to compel the giving of security for costs, cannot be resorted to there.   The fee bill, which regulates the amount of costs in the various courts of record, does not speak of the fees in surrogates' courts.   It merely specifies the "fees of surrogates."   (2 *R. S.* 646, § 33.) The surrogate is a special officer, possessing limited statutory powers.

*O. L. Barbour*, in reply.   As respects the giving of security for costs, there is no difficulty in complying with the 5th section of the statute.   The bond may be filed with the surrogate him

self; who is the clerk of his own court. Thus, surrogates are required to provide seals for their courts, (2 *R. S.* 221, § 4, 5 ;) to issue subpœnas and attachments for witnesses, under their seal of office, to issue citations and attachments against parties, (*Idem*, § 6 ;) to provide and keep books of records &c., (*Idem*, 222, § 7.) And every surrogate is directed carefully to file and preserve all affidavits, petitions, reports, accounts, and all other papers belonging to his court. (*Idem*, 223, § 8.) He also has power to exemplify, under his seal of office, all transcripts of records, papers, or proceedings, &c. (*Idem*, 222, § 6, *sub. 5.*) And by another statute, the clerks of the supreme court, and the surrogates of the several counties, are authorized to make exemplified copies of any last will which shall have been proved in their respective courts, &c. (*Laws of* 1837, *p.* 536, § 68.) These several provisions of the statute show that the legislature had considered and treated the surrogate as the clerk of his own court. And it is a compliance with the statute to file the bond with the person who acts as clerk of the court in which the " suit or proceeding" is pending ; whatever may be his name or title. If this were not so, there never could be any security for costs given in this court; because, although there is a register, and an assistant register of the court of chancery, there is no clerk, *eo nomine.* Again; if there is no clerk, with whom a bond can be filed, of course the plaintiff will be excused from filing it ; but the want of a clerk should not excuse him from giving it. The defendant should not be prejudiced, merely because there happens to be no clerk. The tribunal is not one of his choosing. The provision of the statute before referred to, which requires the surrogate to file and preserve all papers belonging to his court, is certainly broad enough to justify the filing of a bond for costs with him. The objections to the bond are not to be filed with the clerk ; but notice thereof is to be given to the plaintiff's attorney. (2 *R. S.* 620, § 5.)

The surrogate's court is a court of record. It has a judge ; who occupies the place of judge of the old court of probates. It has a seal; (2 *R. S.* 221 ;) and as we have before insisted, it has a clerk, viz: the surrogate himself. It has also records.

(*Idem*, 222, § 7.) The statute declares that " the surrogates' courts shall be at all times open." (*Idem*, 221, § 2.) See also *Id*. 221, § 5, and 223, § 12, where a " surrogate's court" is spoken of. The same phrase occurs in various other places. It is true, the fee bill does not mention surrogates' courts, as such, among the other courts of record. It merely prescribes the personal fees of the surrogate ; and does not profess to embrace the fees of attorneys in that court. Hence it was not necessary to speak of the surrogate's court, as such.

THE CHANCELLOR. I think the surrogate erred in this case, in referring the account to an auditor for examination. For it does not appear that there was any proceeding before him which called for a final settlement of the account of the executor, or for a settlement or adjustment of the account even as between the parties to the proceedings before him. The *rendering* of an account, by an executor or administrator, and the *settlement* of that account after it has been rendered, are not one and the same proceeding, though the latter is frequently a mere continuation of the former proceeding. The 52d section of the article of the revised statutes relative to the duties of executors and administrators, in rendering an account and in making distribution to the next of kin, (2 *R. S.* 92,) authorizes the surrogate, after the expiration of eighteen months, to make an order requiring the executor or administrator to render an account of his proceedings. And such order may be made upon the application of a person having a claim upon the estate of the decedent, either as creditor, legatee, or next of kin, or by any person in behalf of a minor having such a claim; or it may be made by the surrogate, by virtue of his office, and without any application on the part of those who are interested in the estate. The 54th section of the same title directs the manner of rendering such account, and authorizes the examination of the executor or administrator upon oath, touching the payments stated in his account as having been made by him, and as to the property and effects of the deceased which have come to his hands, and the disposition thereof. That, however completes the *rendering* of the accounts. And

Westervelt v. Gregg.

it terminates the proceeding, unless the executor or administrator has asked for a final settlement of the account; or some person interested as a creditor, or legatee, or who is entitled to a distributive share of the estate, has applied for the payment of his debt, or legacy, or distributive share.

Where the executor or administrator applies for a final settlement, the surrogate, after the account has been rendered, is authorized to adjust and settle the account. And for this purpose any person interested in the estate may surcharge or falsify the account which has been rendered; and witnesses may then be examined in relation to the matters in dispute between the parties. In such cases also, the surrogate, in the exercise of a sound discretion in reference to the nature and extent of the questions in dispute between the parties, may refer the accounts, which have been presented to him, to an auditor or auditors, to examine and report thereon. (2 *R. S.* 93, § 60, 64, 70.)

There is another class of cases in which the surrogate is authorized to proceed and settle the account, after it has been rendered in the manner prescribed in the 54th section; although the executor or administrator does not ask to subject himself, or the estate which he represents, to the expense of a final settlement, by any proceeding on his part. The principal object of the proceeding against the executor or administrator, to compel him to render an account, is to enable those who are interested in the estate to ascertain the situation of the fund; and to enable them to obtain the payment of their debts, legacies, or distributive shares, out of such fund, by a decree of the surrogate or otherwise. The surrogate has power to decree the payment of debts, legacies, and distributive shares, out of the funds of the estate in the hands of the executor or administrator. (2 *R. S.* 116, § 18.) Where an application, therefore, is made to the surrogate, by a creditor, or by a legatee who is entitled to a legacy of a specified amount, if the executor or administrator denies that the fund in his hands is sufficient to pay that and all other claims which are entitled to a preference, or to an equality in payment, the surrogate will be authorized to adjust or settle the account of the executor or administrator; for the purpose of as-

Westervelt *v.* Gregg.

certaining whether the claimant is entitled to a decree for the payment of his debt, or legacy, or any part thereof. The petitioner, therefore, if the executor, has not already rendered his account to the surrogate, may in his petition ask for such account, and also for the payment of his debt or legacy. And after the account has been rendered, the surrogate may, if its correctness is disputed, proceed to settle the same, so far as concerns the rights of those parties; and may make his decree as to the payment accordingly. A residuary legatee, or a person who is entitled to a distributive share, may also proceed in the same manner, to have the account of the executor or administrator liquidated and settled, so as to obtain his residuary or distributive share of the estate of the decedent. But in either case, if the applicant, in his petition to the surrogate for an account, has not asked for the payment of his debt, or legacy, or distributive share, but merely that the executor may render an account, as in the present case, he must make a new or further application to the surrogate; stating the nature and extent of his own claim upon the fund, and his objections, if any, to the account rendered by the executor or administrator, and asking that the account may be settled and adjusted, and that he may be paid the amount of his claim, or so much thereof as he may be entitled to, out of the fund in the hands of such executor or administrator.

The petition presented to the surrogate in this case, asked no relief whatever, either general or specific, except that the executor might be ordered to render an account according to law. And that prayer having been fully complied with, the jurisdiction of the surrogate under the same was exhausted. No settlement of the account, therefore, could properly be made, without presenting a new petition for the settlement and adjustment of the account, and the payment of the distributive share of the wife of the petitioner. It may also be proper to observe that as the distributive share belonged to the petitioner's wife, and not to him, the petition should have been in their joint names; so that the accounting would have been binding upon her as well as her husband; and so that the proceedings could have been continued in her name if her husband had happened to die be-

fore the final decree. That, however, was a mere technical objection, which was not made before the surrogate.

I think the surrogate also erred in refusing to permit the executor to verify his accounts in the usual form by oath. The statute makes the oath of the executor evidence in his own favor, as to certain small items of disbursement, and to a limited amount. Beyond those, the oath of the executor to the correctness of the account would not have been evidence in his own favor. But for the protection of the rights of parties interested in the estate as creditors or legatees, the surrogate should in all cases require the account to be rendered on oath.

The estates of deceased persons should not be subjected to the useless expense of producing evidence to prove items in the account of the executor or administrator, when the correctness of those items is not in fact doubted by the adverse parties. The surrogate, upon the settlement and adjustment of the account, therefore, should call upon the party contesting the account to state what items thereof are admitted, and what are intended to be contested, before proceeding to hear the testimony in relation thereto; but with liberty to add to the objections, if upon the examination of the executor or administrator upon oath, or otherwise, it should be discovered that other charges or credits are erroneous. And where the account is referred to an auditor, he should be required to proceed in the same manner. The costs of the accounting being in the discretion of the surrogate, if the party contesting the account subjects the accounting party to useless expense, by unfounded objections, he may be properly charged with costs personally.

The order of the surrogate, referring the accounts to the auditor, not being founded upon any proper application before him for the *settlement* of the account, or upon any proceedings which required a settlement and adjustment of the accounts as between these parties, that order was erroneous and must be reversed. The statute authorizes the examination of the executor on oath upon the mere rendering of an account. But in that case, the examination must be before the surrogate himself; as he is only authorized to appoint an auditor to examine and report upon the

accounts where there is to be a settlement thereof. The reversal of the order of reference is to be without prejudice to the right of the respondent and his wife, to apply to the surrogate for the payment of her proportion of the estate of the testator, if the same has become due and payable, according to the terms of the will; and to settle the account of the executor so far as may be necessary to ascertain the amount which is to be paid.

The proceedings before the surrogate upon rendering the account being at an end, by this reversal of the order of reference to the auditor, the application for security for costs necessarily falls with it. It may be proper for me to say, however, that I have examined the question, presented by that part of the appeal, and have arrived at the conclusion that an application to the surrogate by a creditor, legatee, or distributee of the testator or intestate, to compel the executor or administrator to pay a debt, legacy, or distributive share out of the fund in his hands, is not such a suit as will entitle the party proceeded against to security for costs where the applicant is a non-resident. Although such a proceeding may properly be denominated a suit in the surrogate's court, so as to bring it within the language of the first section of the title of the revised statutes relative to security for the payment of costs, (2 *R. S.* 620,) the other provisions of that title are such as to satisfy me that the first section, as well as the others, was only intended to apply to suits in courts of record.

Neither party is to have costs as against the other upon the appeal.