# N. Y. SURROGATE'S COURT.

IN THE MATTER OF THE ESTATE OF JAMES UGLOW, deceased.

*Accounting before the surrogate — testamentary trustees.*

The surrogate may compel the accounting by testamentary trustees and guardians in the same manner as executors, administrators and guardians appointed by the surrogate are required to account.

And such trustees may therefore be compelled to account on the motion of the surrogate himself, and on such accounting the surrogate may determine the correctness of the account so rendered.

While in the absence of a petition or citation for that purpose the surrogate has no power to order, under a final decree, the distribution of the estate as upon a final accounting, yet he has authority upon an accounting upon the surrogate's motion to pass upon the correctness of the account, and for that purpose may examine the trustees in respect thereto.

And it is the uniform practice to pass upon and determine the state of the account rendered, when rendered upon the application of a creditor or legatee, and though there was no petition for a final accounting; and there is no good reason why such accounting may not be as conclusive upon all the parties represented therein as though it were final.

By the statute (*Laws of* 1870, *p.* 359, *sec.* 6) it is provided that in any accounting in the surrogate's court, or any other proceeding therein, the surrogate may appoint a referee to take testimony as to the facts in relation thereto, to examine the accounts rendered to the surrogate, to hear and determine all disputed claims and other matters relating to said accounts, and to make a report thereon subject to the confirmation of the surrogate.

Where a reference has been ordered to ascertain the state of an account which is not final, and the auditor's report is made to the surrogate, which is excepted to, it is his duty to examine and pass upon the report as to the state of the account and the exceptions thereto.

Where the trustees are sought to be charged personally with the expenses of a suit brought against the estate, on the ground that they refused to refer the claim under the statute, it is no answer by the trustees in

exoneration of their personal liability that they desired to raise the question of the statute of limitations, &c., in that action. That defense and any other which may be interposed in an ordinary action to recover a claim against the estate may be raised on a reference under the statute.

In this case the proof before the auditor did not sufficiently define the loss to the estate by reason of the refusal to refer, and there was no error in his report refusing to charge the trustees personally.

But the trustees were chargeable personally with the expenses of the accounting, as it was so provided by the terms of the order, and there was no authority in the auditor to change it.

As there had been no annual rest in the account under the order of the court, for the purpose of charging the trustees interest, nor an account-- ing annually pursuant to the statute, the trustees were not entitled to full commissions, according to the auditor's report.

There was no good reason based upon the evidence in this matter for charging the trustees with compound interest, on the ground of gross delinquency or intentional violation of duty.

CALVIN, *Surrogate.* — On the 16th day of February, 1874, the late surrogate issued an order requiring the executors, John R. Flanigan and William McDermott, testamentary trustees under the will of the testator, to render an account of their proceedings as such, and that such accounting be at the personal costs and charge of such trustees, unless they should apply to the surrogate for a final settlement within ten days from service of the order. On the 23d day of March, 1874, the trustees filed their account, but failed within the ten days to apply for a final account. On April 6, 1874, objections to the account, by Gideon J. Tucker, Esq., guardian of William R. Uglow and Kate P. Uglow, infants, and *cestui que trusts*, were filed, praying a reference of the account. On the same day the matter was referred to Charles Price, as auditor, who, on the 25th November in the same year, filed his report, to which exceptions were filed on the 21st day of December, 1874. On the 11th day of January, 1875, the said guardian filed a petition on behalf of his wards, setting forth the said order that the trustees' account, which was on motion of the surrogate; the filing of the account, objections

thereto, and order of reference, and the report finding that there was a balance in the hands of McDermott, trustee, applicable to the expenses of this accounting, &c., and for the support and maintenance and education of the infant children $1,155.92, and the filing of exceptions to said report; that on the 10th day of February, 1875, the question of confirming the report was argued before the late surrogate, but no order or decree has ever been entered, and petitioner asks that the said auditor's error in finding the expenses of such reference chargeable against the trust fund be corrected.

The petition states that the said trustees are lawyers, of whom Flanigan is responsible, and McDermott irresponsible; that McDermott had the entire charge of the trust funds, and had mixed them with his own funds, and kept no separate account; that no inventory was ever filed until ordered by the surrogate; that no final accounting has been had, and the estate has lost thousands of dollars by said McDermott's mismanagement defending suits without sufficient reason, &c., and prays that the auditor's report, finding the amount aforesaid in Mr. McDermott's hands applicable to the expenses of said accounting, be disallowed; and that such expenses be declared to be at the costs and charge of such trustees individually. It is objected by counsel for the infants, their guardian, that the surrogate had no authority to grant an order of reference to the auditor, because there was no application for a final accounting and settlement, but that the order only required an accounting. The cases of *Campbell* agt. *Bruen* (1 *Bradf.*, 227); *Westervelt* agt. *Gregg* (1 *Barb. Ch.*, 469; and *Smith* agt. *Van Kuren* (2 *Barb. Ch.*, 473) are cited as authority for this objection.

Section 52 of 2 Revised Statutes at Large, 94, provides that executors and administrators, after the expiration of eighteen months from the time of their appointment, may be required to render an account of their proceedings upon the application of each person having a demand against the personal estate of the deceased, either as creditor, legatee, or

next of kin. Section 54 provides for the production of vouchers for debts, legacies paid and expenses, and for examination of the executors or administrators making such payments, &c. And section 55 provides that on settlement of an account the executors and administrators may be allowed items of expenditure not exceeding twenty dollars, for which no voucher is produced if the item be supported by his oath, &c. Section 58 provides that on settlement of such account the executor or administrator may be allowed commissions, prescribing the amount. Section 60 provides for the final settlement of an executor's or administrator's account, on his application, in case he has been required under a prior section to render the account, showing that there are, as held in the case of *Campbell* agt. *Bruen*, two classes of cases in which the surrogate may proceed to settle the account after it has been rendered.

Chapter 782 of the Laws of 1867, in its first section, provides that the surrogate shall have power and jurisdiction to compel testamentary trustees and guardians to render accounts of their proceedings in the same manner as executors, administrators and guardians appointed by such surrogate are now required to account.

It is clear, therefore, that the surrogate had the power, under this section, to require the trustees in this matter to account, as section 52 of 2 Revised Statutes at Large, 94, above cited, provides that executors and administrators may be compelled to account, on the motion of the surrogate himself, and if no further proceedings could be taken to determine the correctness of the account so rendered, the authority to compel such an account would be valueless and the proceeding an idle ceremony, affording no information or security to the parties interested in the accounting. While in the absence of a petition or citation for that purpose the surrogate has no power to order, under a final decree, the distribution of the estate as upon a final accounting, yet it is apparent that in order to make the accounting on the surro-

gate's motion effectual for any practical purpose, he must have authority to pass upon the correctness of the account, and for that purpose the Revised Statutes provide that the executors or administrators may be examined in respect thereto; and it is the uniform practice to pass upon and determine the state of the account rendered, when rendered on the application of a creditor or legatee, and though there was no petition for a final accounting; and I see no good reason why such accounting may not be as conclusive upon all the parties represented therein as though it were final.

By chapter 359 of the Laws of 1870, section 6, it is provided that in any accounting in the said surrogate's court, or any other proceedings therein, the surrogate may appoint a referee to take testimony as to the facts in relation thereto; to examine the accounts rendered to said surrogate, to hear and determine all disputed claims and other matters relating to said account, and to make a report therein subject to the confirmation of the surrogate. Under this section I entertain no doubt of the authority of the surrogate to make the order of reference to the auditor in this matter. By section 71 of the 2d Revised Statutes at Large, 98, it is provided that whenever an account shall be rendered, and finally settled, it shall appear to the surrogate that any amount of the estate remains to be paid or distributed, he shall make a decree for payment and distribution of what shall so remain among certain legatees, widow and next of kin, according to their respective rights, and settle and determine all questions concerning any debt, claim, legacy, bequest or distributive share, &c., showing that the decree of distribution is to follow the final settlement of an account. There seems to be no reason to doubt that as this accounting is not final, that no such decree can be entered in this case, yet, in order to afford any practical advantage to any of the parties before the court in this proceeding, it seems to me there should be a decree entered finding substantially the state of the account to the time when the same was rendered under the order

Matter of Uglow.

initiating this proceeding. I must, therefore, for that purpose, examine, and pass upon the report of the auditor to which I now address myself. The exceptions filed to the auditor's report, which seem to me to demand particular attention, are :

First. Those relating to the expenses attendant upon the prosecution of the claim of Mrs Uglow against the estate, which was presented and disputed, and an offer on the part of the claimant to refer, under the statutes, and a refusal on the part of the trustees.

Second. To that part of the report which finds that the balance in the hands of the trustees is applicable to the expenses of this accounting.

There is in this case a further question raised by the report as to the propriety of the charges for full commissions on annual rests, which, however, seems not to have been excepted to by the special guardian representing the infants. The annual rests seem to have been made because of the counsel for the infants demanding that the trustees should be charged in their account with interest, and that annual rests for that purpose should be made.

As to the first question raised, the referee seems to assume that the expenses which attended that litigation amounted to about $1,800 ; the special guardian excepts upon the same theory, but an examination of the testimony shows that the costs entered in the judgment were $417.26, and there seems to have been nothing before the auditor showing the amount of referee's fees in that action, which would, in case of a reference under the statute, probably have amounted to about the same ; and from the evidence it seems impossible to determine how much should be charged to the trustees by way of expenses unnecessarily incurred by reason of their refusal to refer. Section 41 of 2 Revised Statutes at Large, 92, provides that no costs shall be recovered against executors or administrators, to be levied of their property, or the property of the deceased, unless it appear that the demand on which

Matter of Uglow.

the action was founded was presented within the time
required; that its payment was unreasonably resisted or neg-
lected, or that the defendant refused to refer the same,
according to the statute, in which case the court may direct
such costs to be levied on the property of the defendant, or
of the deceased, as shall be just, having reference to the facts
that appear on the trial.   On the part of the trustees it is
urged that they should not be personally charged with the
costs of the action brought by Mrs. Uglow against the trustees
on her claim, because.they desired to raise the question of the
statute of limitations, &c.   A sufficient answer to this sug-
gestion is, that any defense which may be interposed in an
ordinary action to recover the amount of the claim, may be
raised on a reference under the statute, and it is occasion for
surprise that the trustees in this matter, who are reputable
lawyers, should make such an excuse for refusing to refer.   It
is also urged as a reason why the trustees on this accounting
should not be charged with the costs of that action, that the
court did not direct such costs to be levied on the property
of the defendants, and that it was peculiarly within the
province of that court to pass upon that question.   For the
purposes of that action it is true that it was for the court to
determine the question, whether the payment of the claim
had been unreasonably resisted, or there had been a refusal
to refer, but on that question the parties seeking to charge
the trustees were not represented, and it may have been a
question of indifference to the plaintiff in that action whether
the costs were charged upon the trustees individually or upon
the estate.   Her neglect to apply to the court for such a
direction cannot estop the objectors in this proceeding; and
if the amount were considerable and reasonably ascertained,
I should not hesitate to hold that the trustees might be
charged personally with the costs in this action, or, rather,
their account charging the estate therewith be disallowed.
But the proof before the auditor does not sufficiently define
the loss to the estate by reason of the refusal to refer.   The
amount paid to counsel representing the trustees in that

action may not have been greater than would have been charged for the like services before a referee under the statute. A considerable proportion of the $1,800 mentioned in the auditor's report, and in the exceptions filed thereto, is made of interest accruing upon the original claim, during the pendency of the litigation ; and, under the circumstances of the case, I am not able to say that the auditor committed any error in his finding upon that question.

As to the second exception, I think it quite clear that it is well taken. The terms of the order provide that the accounting shall be at the expense of the trustees, and I know no authority that an auditor has to change the terms of the order by his report; and it seems to me equally clear that while that order stands the present surrogate should respect its provisions, and that he has no power to set it aside on a motion to confirm an auditor's report. It may be urged against this construction of the order, that when the order was made it only contemplated a formal rendering and filing of the account, and did not embrace an investigation respecting its correctness; but I have already suggested that the statute providing for such an accounting presupposed the authority of the surrogate to investigate and pass upon the correctness of the account ; and in this case, both logically and equitably, the terms of the order should be followed because the investigation of the account before the auditor has resulted in material additions to the charges against the trustees, and has shown that the account in several particulars was not correct. The question as to the charges of compound interest and allowing full commissions on annual rests, is one of embarrassment, because of the peculiar manner in which this question is treated by the special guardian and the auditor. The auditor seems to base the allowance of full commissions upon the claim of the special guardian, that interest should be charged to the trustees on the funds remaining in their hands, and the special guardian appears to have acquiesced in that finding, as he has interposed no exception to the auditor's report in that particular, the result

of which is in charging of the trustees with $200.33 as interest, and the sum of $1,114.35 is credited to them by way of commissions, and an excess over ordinary commissions amounting to $597.79. If this state of things was acquiesced in by the counsel acting as special guardian in these proceedings, with full knowledge of its consequences, it would be embarrassing to interfere with the finding of the auditor in that respect; and yet, where such injustice toward infants is apparent, it seems to be the obvious duty of the court to correct the error and set the infant claimants right; but I think that the auditor fell into an error when he supposed that because annual rests might be made full commissions should be charged against the estate. The earlier cases seem to hold that such commissions are only chargeable in cases where annual rests are made, under the order of court, for the purpose of charging executors with interest, but the more recent decisions authorize annual rests and full commissions in all cases where such accounting is made under the requirements of a rule of court, or by the provisions of a statute.

It is clear, however, that as yet there have been no annual rests in this account under the order of the court for the purpose of charging the trustees interest, nor was there an accounting annually, pursuant to the statute, and I see no reasons for charging full commissions, according to the auditor's report; nor am I able to perceive any good reason, based upon the evidence in this matter, for charging the trustees with compound interest. The charge of compound interest is based upon evidence of gross delinquency or an intentional violation of duty. The evidence before the auditor, in my opinion, does not warrant the finding that the trustees, or either of them, had been guilty of gross delinquency or intentional violation of duty. In the respects above suggested the auditor's report should be modified, and in other respects confirmed.

Let an order conformable to the above views be presented for signature on two days' notice to the adverse party.